<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                              :
**RAFAEL ROMERO,**            :
                              :    Civil Action No. 12-0003 (ES)
            **Petitioner,**   :
                              :
      v.                      :    OPINION
                              :
**UNITED STATES OF AMERICA,** :
                              :
            **Respondent.**   :
_____:

**SALAS, DISTRICT JUDGE**

Presently before the Court is the Amended Petition of Rafael Romero ("Petitioner") brought pursuant to 28 U.S.C. § 2255. (D.E. No. 4, Amended Petition ("Am. Pet.")). Respondent, United States of America ("Respondent"), filed an Answer, (D.E. No. 9, Answer), and Petitioner filed a Reply, (D.E. No. 13, Reply). For the following reasons, the Court denies the Amended Petition, and declines to issue a certificate of appealability.

**I.    BACKGROUND**

On July 11, 2008, a jury convicted Petitioner on ten counts of wire fraud under 18 U.S.C. § 1343 and one count of mail fraud under 18 U.S.C. § 1341. (*United States v. Romero*, Crim. Action No. 07-910 (JAG), D.E. No. 70). The Third Circuit summarized the facts of Petitioner's case as follows:

> From 1998 to 2006, Romero held himself out to be an astute investment advisor who could guarantee risk-free, high rates of return. During that time, he convinced dozens of victims to give him money to invest from their retirement savings, cash advance lines on their credit cards, equity in their homes, and brokerage accounts. Instead of faithfully investing his victims' money, Romero spent the vast majority of it on gambling, drinking, renting cars, going to night

> clubs, and, as the District Court found, generally "letting the good times roll."
>
> . . . [B]ank and brokerage records showed that Romero received over two million dollars from victims; checks from Romero to victims showed that he may have returned up to $780,000 to his victims; an estimate by a special agent of the Federal Bureau of Investigation put collective net losses of Romero's victims at $1,884,874.25; at least one victim invested with Romero because of a "false sense of trust and camaraderie" based on a shared nationality, youth, and past; certain older victims could no longer retire after losing all of their retirement savings to Romero; several victims faced financial insolvency because of Romero's fraud; one victim suffered continued insomnia and mood problems after losing his family's money to Romero's scheme; and one victim was so sickened by losing her family's money that she had to seek medical treatment and suffered depression.

*United States v. Romero*, 410 F. App'x 460, 461-62 (3d Cir. 2010) (internal footnote omitted).

The Honorable Joseph A. Greenaway, Jr., U.S.D.J. sentenced Petitioner to 150 months of imprisonment, a special assessment of $1,100, and restitution in the amount of $1,884,874.25. (*Romero*, Crim. Action No. 07-910 (JAG), D.E. No. 79). To reach that sentence, the sentencing court applied a sixteen-level enhancement pursuant to U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2B1.1(b)(1)(I) because the amount of loss from Petitioner's fraud exceeded one million dollars; a two-level enhancement pursuant to U.S.S.G. § 3A1.1(b)(1) because at least one of Petitioner's victims was a vulnerable victim; a two-level enhancement pursuant to U.S.S.G. § 3B1.3 because Petitioner abused a position of trust to conduct his fraud; and a four-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(2)(B) because Romero defrauded more than 50 victims. *See Romero*, 410 F. App'x at 462. In addition to those sentencing enhancements, the sentencing court agreed with the Government that a two-level upward departure was appropriate under § 5K2.3 because Petitioner's offense caused extreme psychological injury to his victims. *See id.*

Petitioner filed an appeal, arguing that the sentencing court erred by finding that the amount

of loss from his fraud exceeded one million dollars, that some of his victims were vulnerable, and that Petitioner abused a position of trust. *Id.* at 461. Petitioner also challenged the appropriateness of the two-level upward departure under U.S.S.G. § 5K2.3 for causing extreme psychological injury. *Id.* The Third Circuit denied his appeal, and, relevant to the instant § 2255 motion, held that the sentencing court did not clearly err when it determined that the loss exceeded one million dollars because the court only had to make a reasonable estimate of the loss. *Id.* at 462.

On December 14, 2011, Petitioner filed his original § 2255 motion. (D.E. No. 1, Petition). He raised only two grounds for relief: (1) ineffective assistance of counsel when counsel failed to request a "*Fatico* hearing," and (2) ineffective assistance of counsel when counsel failed to call an expert witness to review the "exculpatory evidence." (*Id.* at 5-6). On July 20, 2012, the Court entered an order pursuant to *United States v. Miller*, 193 F.3d 644 (3d Cir. 1999), advising Petitioner that he may have his petition ruled upon as filed or he may withdraw his pleading and file an amended, all-inclusive § 2255 petition. (D.E. No. 2, *Miller* Order at 1). On September 4, 2012, pursuant to this Court's *Miller* order, Petitioner filed an amended § 2255 petition, alleging four grounds for relief: (1) violation of his due process rights when the Government failed to identify the alleged victims of his crimes; (2) violation of his due process rights when the Government did not meet its burden of establishing by a preponderance of the evidence that all fifty-four alleged victims were actual victims; (3) violation of his due process rights when the Government overestimated the losses of the alleged victims; and (4) ineffective assistance of counsel when counsel failed to challenge the Government's uncorroborated evidence. (Am. Pet. 1-13).

3

## II.     DISCUSSION

### A. Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Unless the moving party claims a jurisdictional defect or a Constitutional violation, the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, (or) an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

The habeas statute requires an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992). Where the record, as supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by a petitioner or indicates that petitioner is not entitled to relief as a matter of law, no hearing is required. *Gov't of V.I. v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546 (explaining that an evidentiary hearing is only

4

necessary where the petitioner's claims are not conclusively resolved by the record). For the reasons explained below, Petitioner's claims are without merit, and therefore the record establishes that Petitioner is not entitled to relief as a matter of law. Thus, an evidentiary hearing is not required.

**B. Analysis**

### 1. Calculation of Number of Victims (Grounds One and Two)

In Grounds One and Two of the Amended Petition, Petitioner challenges the sentencing court's calculation of the number of victims. Specifically, Petitioner alleges that "the Government failed to identify alleged victims concerning the $306 thousand in cash deposits" and "did not meet their burden of Preponderance of the Evidence that all the 54 alleged victims were actual victims, by the Government not providing Material Facts for their arguement [sic]."[1] (Am. Pet. ¶ 12, Grounds One and Two.)

As stated above, relief under § 2255 is available only when "the claimed error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice,' and . . . 'present(s) exceptional circumstances where the need for the remedy afforded by the writ . . . is apparent.'" *Davis v. United States*, 417 U.S. 333, 346 (1974) (quoting *Hill*, 368 U.S. at 428). Petitioner has failed to meet that burden for Grounds One and Two.

Petitioner argues that the sentencing court improperly determined that the number of victims was more than fifty because the Government failed to meet its burden of establishing this

---

[1] Petitioner's accompanying "Memorandum of Law" appears to combine Grounds One and Two of the Amended Petition with Ground Three, calculation of loss. (*See* D.E. 4-1, Memorandum in Support of the Amended Petition ("Mem.") 1-12). However, to the extent Petitioner intended to raise separate grounds challenging the calculation of the number of victims, the Court separately addresses these arguments.

number by a preponderance of the evidence. (Mem. 1-6). However, that is not the case. The Government presented ample testimony and exhibits from the FBI agent assigned to this matter regarding the steps she and her team took to identify the various victims in this case. Those steps included interviews with each of the fifty-four victims, as well as corroboration with documents wherever possible. (*Romero*, Crim. Action No. 07-910 (JAG), D.E. No. 84, Sentencing Tr. at 46:12-54:4, 60:16-61:5). Relying on the testimony provided by the FBI Agent, the exhibits from the Government, as well as trial testimony, the court stated the following at sentencing with regard to the number of victims:

> The defense's next position raised in its December 26th letter to the Court is with regard to the number of victims, and that relates to 2B1.1(b)(2)(A). And the defense argues that the victims fall within (A), therefore, there should only be a two-level increase. (2)(A) reads: If the offense involved 10 or more victims, or was committed through mass marketing, increase by two levels. If the offense -- (B) reads: If the offense involved 50 or more victims, increase by four levels. Exhibit 60, Exhibit 43A, Exhibit 45E-1, the testimony of the agent, the testimony of the victims themselves, the testimony of Mr. Duran, who worked with Mr. Romero, certainly lead this Court to the obvious conclusion that the victims here numbered more than 50, and this Court shall increase the offense level by four levels, not two.

(*Id.* at 107:2-17).

Certainly, Petitioner has not shown "a fundamental defect which inherently results in a complete miscarriage of justice, (or) an omission inconsistent with the rudimentary demands of fair procedure." *See Horsley*, 599 F.2d at 1268 (quoting *Hill*, 368 U.S. at 428). Instead, the sentencing court properly determined that the Government met its burden of establishing that the number of victims exceeded fifty. Petitioner's desire at this juncture to go through the list of victims and require that the Government provide more support does not warrant habeas relief.

Thus, the Court denies relief on Grounds One and Two of the Amended Petition.[2]

### 2. Calculation of Loss (Ground Three)

In Ground Three of the Amended Petition, Petitioner essentially restates the argument he raised on direct appeal: that the trial court erred when it determined the amount of loss suffered by his victims. Petitioner argues that he was denied due process when the Government overestimated the losses of the alleged victims, which resulted in a sentence enhancement. (Am. Pet. ¶ 12, Ground Three). These arguments were already considered and rejected on direct appeal.

Specifically, the Third Circuit stated:

First, given the uncertainty that Romero returned $780,000 to his victims, the District Court did not clearly err in finding the loss to exceed one million dollars. The Court only had to make a reasonable estimate of the loss. *See* U.S.S.G. § 2F1.1 cmt. n.3(C) (2008) ("The court need only make a reasonable estimate of the loss."). The District Court heard testimony from a special agent of the FBI that the loss to victims exceeded one million dollars even accounting for the return of $780,000 to the victims. It was not clear error to credit that testimony. *United States v. Napier*, 273 F.3d 276, 279–80 (3d Cir. 2001) (finding no clear error where, in the face of conflicting evidence regarding the amount of loss, the District Court found the Government's evidence more reliable).

*Romero*, 410 F. App'x at 462-63.

None of the allegations or arguments presented in the Amended Petition even remotely call

---

[2] The Court further notes that a motion under 28 U.S.C. § 2255 cannot be used as a substitute for a direct appeal. *Nicholas*, 759 F.2d at 1074. If a movant fails to raise a claim on direct appeal, that claim is procedurally defaulted and cannot thereafter be reviewed pursuant to 28 U.S.C. § 2255 unless the movant demonstrates cause for the default and prejudice, or shows that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 621-23 (1998); *see also United States v. Travillion*, 759 F.3d 281, 288 n.11 (3d Cir. 2014) ("[I]ssues which should have been raised on direct appeal may not be raised with a § 2255 motion."). Here, Petitioner did not raise the issue regarding the number of victims on appeal, nor has he demonstrated cause or prejudice for the default, or actual innocence.

into question the Third Circuit's decision. Petitioner is simply dissatisfied with the holding and is attempting to reassert his previously rejected arguments. However, a § 2255 petition is not a forum to relitigate issues already decided on direct appeal. *See United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993); *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014). Therefore, because the Third Circuit already rejected Petitioner's arguments regarding calculation of loss on direct appeal, the Court does not consider that issue on collateral review and denies relief on Ground Three.

### 3. Ineffective Assistance of Counsel (Ground Four)

In Ground Four of his Amended Petition, Petitioner alleges ineffective assistance of counsel based on his trial counsel's failure to challenge uncorroborated evidence. (Am. Pet. ¶ 12, Ground Four). In particular, Petitioner contends that counsel was ineffective "as a result of not preparing properly and lack of communication with petitioner." (Mem. 13). Petitioner further argues that counsel "should have required the government to provide copies of canceled checks paid to petitioner by investors, provide investor's deposit slips and bank statements, along with tax returns to unambiguously determine losses suffered by investors or if there was a profit." (*Id.*). Petitioner asserts that, due to counsel's alleged failure to demand the information, counsel "was placed on the defensive where the government relied more on hyperbole than evidence. Consequently, he was unable to adequately challenge the government." (*Id.*).

The Sixth Amendment[3] guarantees criminal defendants the right to effective assistance of

---

[3] The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

8

counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). To succeed on a claim of ineffective assistance of counsel, Petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, Petitioner must show that counsel's performance, (viewed as of the time of counsel's conduct) was inadequate and "fell below an objective standard of reasonableness," in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687-88. Second, Petitioner must then show that the deficient performance prejudiced the defense. In other words, Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Because "[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial," the Supreme Court has admonished lower courts that "the *Strickland* standard must be applied with scrupulous care." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). "It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence." *Id.* (internal quotation marks omitted). However, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotation marks omitted). As noted above, to pass the prejudice prong, Petitioner must show with reasonable probability that, but for his counsel's professional incompetence, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of

the proceeding.    Virtually every act or omission of counsel would meet that test."    *Id.* at 693.

Here, Petitioner cannot meet the first prong of *Strickland*.    Despite Petitioner's arguments to the contrary, it is clear that trial counsel vigorously opposed the Government's projection of loss and number of victims.    Specifically, counsel submitted a letter to Probation objecting to the portions of the Pre-Sentence Investigation Report that calculated the loss amount as greater than $1,000,000 and the number of victims as over fifty.    (D.E. No. 9-6, Answer, Ex. E, Oct. 15, 2008 Ltr.).    Counsel also filed a sentencing memorandum that contested the Government's estimated amount of loss and number of victims.    (D.E. No. 9-7, Answer, Ex. F, Sentencing Mem. 1-3).    Finally, at sentencing, counsel challenged the amount of loss and number of victims in his detailed and thorough cross-examination of FBI Special Agent Michelle Pickels, who the Government called to explain its calculations.    (D.E. No. 9-5, Answer, Ex. D, Sentencing Tr. at 55:12-79:10).

In short, counsel provided competent and effective representation to Petitioner throughout the sentencing phase of his criminal case.    At several different times, he extensively argued against the Government's calculations of loss and victims.    Though Petitioner now argues that counsel should have requested various documents from the Government that would have allowed him to more efficiently challenge the Government's projections, *Strickland* itself precludes that kind of second-guessing.    *See Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

Petitioner has also failed to establish that he suffered prejudice as a result of counsel's

10

alleged ineffectiveness. Petitioner argues that, as a result of counsel's failure to request various discovery, counsel was unable to adequately challenge the Government's arguments at sentencing. (Mem. 13). However, as discussed above, counsel more than adequately challenged the Government's evidence during sentencing. Furthermore, a sentencing court only has to make a reasonable estimate of the loss, *see* U.S.S.G. § 2F1.1 cmt. n.3(C) (2008), and the Government was only required to show the amount of loss by a preponderance of the evidence, *see United States v. Brennan*, 326 F.3d 176, 200 (3d Cir. 2003). Here, the Government presented substantial evidence of the loss and number of victims, including financial records and testimony from Petitioner's victims and a former employee. Petitioner has not shown with any probability that, but for his counsel's alleged professional incompetence, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694.

Because Petitioner cannot meet either prong of the *Strickland* analysis, the Court also denies relief on Ground Four.

### III.   CERTIFICATE OF APPEALABILITY

This Court declines to issue a certificate of appealability because Petitioner has not demonstrated "a substantial showing of the denial of a constitutional right," as required under 28 U.S.C. § 2253(c). *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (internal quotation marks omitted).

## IV. CONCLUSION

For the reasons stated above, Petitioner's motion is DENIED, and no certificate of appealability shall issue.  An appropriate order follows.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
